UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JOHN MCCORMICK,

                     Petitioner,

                                                          **DECISION AND ORDER**

    -vs-                                                 **No. 07-CV-6317 (VEB)**

SUPT. JAMES MORRISEY,

                     Respondent.
_____

**I.     Introduction**

Proceeding *pro se*, James McCormick ("McCormick" or "Petitioner") has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his state custody pursuant to a judgment of conviction following a guilty plea to felony driving-while-intoxicated ("DWI") (New York Vehicle and Traffic Law ("V.T.L.") §§1192(3), 1193(1)(c)(i). McCormick was.

The parties have consented to disposition of this matter by a magistrate judge pursuant to 28 U.S.C. § 636(c)(1).

**II.    Factual Background and Procedural History**

    **A.     Petitioner's Guilty Plea**

After Petitioner was arraigned on April 8, 2003, in Monroe County Supreme Court on charges of felony driving while intoxicated and various violations of the Vehicle and Traffic Law, he was released on bail. While on bail, he was arrested in neighboring Orleans County and charged with another instance driving while intoxicated. (9-10, 15, 25, 33-34).

On August 27, 2003, Petitioner pled guilty to the first count of the Monroe County indictment. In reciting the plea agreement, defense counsel informed the trial court, "[I]t's my

understanding he will be accepting a plea to . . . the first count of the indictment, which is a [class] D felony, DWI, with a sentence promise from this court of two to six [years]. He will be pleading in Orleans County, and it's my understanding that this court would promise my client a concurrent sentence with Orleans County. It's an E felony in Orleans County and so he would be getting a one and a third to four there." After confirming the agreement with the prosecutor, the trial court asked defense counsel, "[T]here would not be any difficulty with the Orleans County case that the sentence be served concurrently?" Defense counsel responded, "To my knowledge[,] no." (54-55, 64) Sentencing was then scheduled for September 28, 2003. (56-66).

The September 28th sentencing proceeding was adjourned and Petitioner next appeared in Monroe County Supreme Court on October 28, 2003. At that time defense counsel explained, "I received information from Mr. McCormick's attorney in Orleans County yesterday afternoon that, in fact, he was not sentenced yesterday. He was scheduled to be sentenced. I spoke with Mr. McCormick this morning. He indicated to me that he withdrew his plea yesterday."[1]

Petitioner then moved to withdraw his guilty plea in Monroe County, claiming that his attorney had not "fulfilled her obligation in explaining everything," that he had been "forced" to plead guilty under "duress," and that the prosecutory improperly had used a conviction over ten years old to indict him on a class D felony. The court trial denied the motion. The court then stated, "There was an initial understanding and agreement that any sentence today would run

---

[1] According to the pre-sentence investigation report ("PSI"), Petitioner was scheduled to be sentenced on March 27, 2003, in Orleans County, and none of the available court records indicated that no sentencing promises had been made in that matter.

concurrent with the Orleans County sentence. I'm not privy to what has taken place in Orleans County. That matter is not before me, and my sentence will be as previously promised regardless of what Orleans County may or may not do pertaining to a pending charge there."

Petitioner thereafter admitted that he had been convicted of two prior felony DWIs, as alleged in the special information, but repeated that one of them was not within the statutory ten-year time-period. Defense counsel then indicated that since it was McCormick's position that he should be subject to a class E rather than a class D felony conviction, the two to six year sentence "would not be a sentence that he could get"; in other words, a two-to-six-year sentence was not a legal sentence for a class E felony conviction under the applicable provisions of New York's Penal Law.  The trial court then noted that he found that there were two prior convictions within the ten-year period based on the information he had before him, and sentenced Petitioner to the promised two to six year term of imprisonment. (70-80).

Two days later, on October 30, 2003, the trial court announced that it had verified that Petitioner did in fact have only one prior felony conviction within the prior ten years, and thus the sentence imposed was illegal. The trial court vacated the prior sentence, and Petitioner him to an indeterminate term of one and one-third to four years. Before imposing the new sentence, the trial court denied Petitioner's application to adjourn the sentencing until after he was sentenced in Orleans County so that the court could sentence him to a concurrent sentence, and further denied his renewed motion to withdraw his plea so that he could "have an opportunity to take care of the matter in Orleans County, then take care of this matter" (83-90).

According to the certificate of conviction from Orleans County, Petitioner pled guilty on September 29, 2003, to felony DWI and third degree aggravated unlicensed operation of a motor

vehicle. He was sentenced on December 1, 2003, to an indeterminate term of one to three years, to run consecutively to any previously imposed sentence. Thus, McCormick's aggregate term of imprisonment for the Monroe County and Orleans County convictions is two and one-third to seven years.

### B.    Post-Conviction Proceedings in State Court

On or about July 20, 2004, prior to perfecting his direct appeal to the Appellate Division, Petitioner, acting *pro se*, moved in in Monroe County Supreme Court to vacate the conviction and sentence pursuant to New York Criminal Procedure Law ("C.P.L.") §§ 440.10 and 440.20, arguing that the indictment was jurisdictionally defective, the indictment was duplicitous, and trial counsel was ineffective. The motion was denied without an evidentiary hearing on August 25, 2004, on the basis that the grounds raised were of the type that could be reviewed on the pending appeal. *See* N.Y. Crim. Proc. Law § 440.10(2)(a), (b). Petitioner's request for reconsideration was denied. Leave to appeal the denial of C.P.L. § 440.10 relief was denied by the Appellate Division.

An appeal was subsequently taken to New York State Supreme Court, Appellate Division, Fourth Department. In his brief, Petitioner contended that because the Monroe County sentence was imposed before the Orleans County case was disposed of, the sentencing court erred when it, in effect, imposed a more severe sentence than initially contemplated. Petitioner did not seek to withdraw his guilty plea; rather, he sought only to have his sentence modified to run concurrently with the Orleans County sentence. The Appellate Division unanimously

affirmed the petitioner's conviction, *People v. McCormack*,[2] 21 A.D.3d 1352, 804 N.Y.S.2d 156 (App. Div. 4th Dept. 2005), ruling that since the Monroe County Supreme Court's promise of concurrent time was based on petitioner's statement that he would plead guilty to the Orleans County DWI charge, petitioner waived his right to request the fulfillment of the original sentence promise by withdrawing his plea in Orleans County. Leave to appeal the Appellate Division's order affirming the conviction to the to the New York Court of Appeals was denied. *People v. McCormack*, 5 N.Y.3d 884, 808 N.Y.S.2d 586 (N.Y. 2005).

On or about February 21, 2006, Petitioner filed a second *pro se* motion to vacate the conviction and sentence pursuant to C.P.L. §§ 440.10 and 440.20 in Monroe County Supreme Court. The motion was denied without an evidentiary hearing. In this motion, as in his first motion for *vacatur*, McCormick contended that he should have been allowed to withdraw his guilty plea before being sentenced to a term of imprisonment less than that promised. The trial court denied the motion on the ground that the issue was or should have been raised in his direct appeal. The Appellate Division denied permission to appeal denial of the motion to vacate.

### C. The Federal Habeas Petition

McCormick asserts eleven grounds for habeas relief, ten of which relate to his Monroe County conviction and sentence, and one of which relates to his 2005 unsuccessful bid for release to parole supervision.

Respondent has asserted the affirmative defenses of procedural default and failure to exhaust with regard to all of the claims.

---

[2] Although Petitioner's name is McCormick, the captions of the state court actions give his name as "McCormack."

For the reasons that follow, the petition is dismissed.

### III.     Standard of Review under 28 U.S.C. § 2254(d)

When a petitioner "in custody pursuant to the judgment of a State court" seeks habeas review of "any claim that was adjudicated on the merits in State court," a habeas writ may issue only if the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A state court decision is "contrary to" federal law as determined by the Supreme Court if either (a) "the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law," or (b) "the state court considers facts that are materially indistinguishable from a relevant Supreme Court case and arrives at an opposite result." *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). An "unreasonable application" of clearly established federal law occurs if (a) " 'the state court identifies the correct governing legal rules from the [Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case,' " or (b) the "state court invokes a Supreme Court case and unreasonably extends its legal principle to a new context where it should not apply, or fails to extend it where it should apply." *Williams*, 529 U.S. at 407.

### III.    The Exhaustion Requirement

A habeas petitioner must have exhausted all state remedies before seeking federal habeas relief. See 28 U.S.C. § 2254(b)(1); *Daye v. Attorney Gen'l of N.Y.*, 696 F.2d 186, 190 (2d Cir.1982) (*en banc*), *cert. denied*, 464 U.S. 1048, 104 S.Ct. 723, 79 L.Ed.2d 184 (1984). In order

for a claim to be considered exhausted, it must have been presented fully and fairly in federal constitutional terms to the State courts. *See*, *e.g.*, *Duncan v. Henry*, 513 U.S. 364, 365-66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *Picard v. Connor*, 404 U.S. 270, 275-76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye*, 696 F.2d at 191. A claim is exhausted if it has been "fairly presented" to the state court. *Daye*, 696 F.2d at 191. To fairly present a federal constitutional claim, the petitioner must have set forth for the state court all the essential factual allegations and legal premises now being asserted in federal court. *Id.* "

### IV. The Adequate and Independent State Ground Doctrine and Procedural Default

The Supreme Court has made clear that the "adequate and independent state ground doctrine applies on federal habeas," such that "an adequate and independent finding of procedural default will bar federal habeas review of the federal claim, unless the habeas petitioner can show cause for the default and prejudice attributable thereto, or demonstrate that failure to consider the federal claim will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) (citations and internal quotations omitted). Even where the state court also considers a petitioner's arguments on the merits, that is of no moment because "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990). Thus, "as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas." *Harris*, 489 U.S. at 264 n. 10; *accord Coleman v. Thompson*, 501 U.S. 722, 735, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991);

*Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 809 (2d Cir.2000); *Bossett v. Walker*, 41 F.3d 825, 829 (2d Cir.1994), *cert. denied*, 514 U.S. 1054, 115 S.Ct. 1436, 131 L.Ed.2d 316 (1995).

To show a "fundamental miscarriage of justice" requires a demonstration of "actual innocence." *See*, *e.g.*, *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998) (citing *Sawyer v. Whitlety*, 505 U.S. 333, 339 (1992) (."The miscarriage of justice exception is concerned with actual as compared to legal innocence."). The Supreme Court has emphasized that the exception has a "narrow scope," *Sawyer*, 505 U.S. at 339. "To be credible," a claim of actual innocence must be based on reliable evidence not presented at trial[,]" *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *accord Calderon*, 505 U.S. at 339.

V.     **Analysis of the Petition**

   A.     **Claims Related to Petitioner's Plea and Sentence (Grounds One Through Ten)**

As Respondent points out, the only ground raised in the petition that was specifically presented on direct appeal is contained in Ground Seven of the petition, in which McCormick claims that his sentence should be modified because the trial court imposed a more severe sentence than that promised at the time of the entry of his guilty plea. The Appellate Division correctly ruled as follows:

> On appeal from a judgment convicting him, upon his plea of guilty, of felony driving while intoxicated (Vehicle and Traffic Law § 1192 [3]; § 1193 [1] [c] [i]), defendant contends that Supreme Court, Monroe County, failed to adhere to its promise to impose a sentence concurrent to the sentence to be imposed in a pending matter in Orleans County. We reject that contention. The court's promise was based on the statement of defendant to the court that he would plead guilty to the charge of felony driving while intoxicated in Orleans County, but defendant thereafter withdrew his plea of guilty in Orleans County. "Under these

> circumstances[,] 'there was a waiver of any rights the defendant may have had to request the fulfillment of the original promise as to sentence'" (*People v Alvarado*, 160 AD2d 1012, 1013 [1990], *lv denied* 76 NY2d 784, 937 [1990]).

*People v. McCormack*, 21 A.D.3d at 1352, 804 N.Y.S.2d 156, 2005 N.Y. Slip Op. 07131. This holding was in line with Federal law. *See United States v. Brody,* 808 F.2d 944, 947 (2d Cir.1986) ("The remedy for a breach plea agreement is either to permit the plea to be withdrawn or to order specific performance of the agreement."); *see also Santobello v. New* York, 404 U.S. 257, 262-63 (1971) (remanding to sentencing judge to determine whether the appropriate remedy for breach of a plea agreement is to allow the defendant to withdraw his plea or to require specific performance).  Although usually the defendant is the party seeking specific performance for a breached plea agreement, where a defendant is in breach, the government may be entitled to specific performance. *See United States v. Alexander*, 869 F.2d 91, 95 (2d Cir. 1995) ('Alexander argues, without citing authority, that the government should never be entitled to specific performance, even though it is a remedy sometimes available to a criminal defendant who seeks to obtain the benefit of his plea bargain. He argues that, because none of the cases providing specific performance of plea agreements has yet provided that remedy to the government and since none involved forfeiture or surrender of assets, Santobello and its progeny are not applicable to this case. In particular, he argues that specific performance is available as a remedy 'solely' for 'prosecutorial misfeasance', and should not be extended to the situation here, where the defendant is alleged to have breached the plea agreement. We disagree. Although each of the prior cases recognizing specific performance as a remedy for breach of a plea agreement arose in the context of the government's breach, we see no reason to deny the government a similar remedy for the defendant's breach of the plea agreement in appropriate circumstances.").

The remainder of McCormick's claims in Grounds One through Six and Eight through Ten repeat essentially the same allegations as Ground Seven, but recast them as claims of "coercion", "judicial misconduct", a violation of the doctrine of *stare decisis*, etc. For instance, under Ground Three, McCormick contends that the Appellate Division and Court of Appeals "undermine[d]" the doctrine of *stare decisis* "by not addressing the trial courts [sic] impermissible proceeding, when it erred in proceeding sua-sponte to vacate petitioner's sentence without his consent." McCormick is referring to the trial court's realization that it had mistakenly accepted the prosecutor's argument that McCormick had a second predicate felony within the ten-year time period and, on that basis, had imposed a longer than warranted sentence. The trial court thus accepted the argument McCormick had made at previous appearance date and issued the appropriate relief–vacating the illegal sentence and imposing the correct (shorter) sentence. Contrary to McCormick's contention, vacatur of the plea was not warranted on this basis. This is simply another attempt by McCormick to evade responsibility for his incorrect statement to the Monroe County judge that the Orleans County judge had in fact agreed to allow him withdraw his plea, when at the time he made that statement, he knew that it was not true. This claim is spurious.

Then, in Ground Four, he repeats his dissatisfaction with the trial court's acceptance of his own argument that he was improperly sentenced on a class D felony conviction, the court's vacatur of the illegal sentence and subsequent resentencing to a lesser sentence for a class E felony. Now it is recast as a violation of public policy and an example of judicial misconduct and overreaching. Again, this claim is factually and legally baseless.

Moreover, as Respondent argues, the claims set forth in Grounds One through Six and

Eight through Ten are procedurally defaulted under C.P.L. § 440.10(2)(b) and § 440.10(2)(c).[3] *See e.g., Sweet v. Bennett,* 353 F.3d 135, 140-41 (2d Cir.2003) (petitioner's ineffective assistance of trial counsel claim was "well-established in the trial record" and could have been brought on direct appeal; C.P.L. § 440.10(2)(c) under the circumstances was an adequate and independent state law ground that barred federal habeas review); *Aparicio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001) (record-based claims procedurally barred by C.P.L. § 440.10(2)(c)); *Curry v. Bennett*, Nos. 02-CV-3655(JBW), 03-MISC-0066(JBW), 2003 WL 22956980, at *15 (E.D.N.Y. Oct. 17, 2003) (state court's reliance upon section 440.10(2)(b) of the New York Criminal Procedure Law to deny petitioner's ineffective assistance of counsel claim was an adequate and independent state ground barring habeas review).

Here, because the state courts explicitly relied upon adequate and independent grounds–namely Sections 440.10(2)(b) and 440.10(2)(c)–in denying all of McCormick's other claims relating to his plea and sentencing when raised in his pre-appeal and post-appeal C.P.L. § 440.10 motions, these claims are procedurally defaulted. In order to obtain review on the merits by this Court, McCormick would have to show "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U .S. 722, 750,

---

[3]   C.P.L. § 440.10(2)(b) provides that "the court *must* deny a motion to vacate judgment when . . . [t]he judgment is, at the time of the motion, appealable or pending on appeal, and sufficient facts appear on the record with respect to the ground or issue raised upon the motion to permit adequate review thereof upon such an appeal." N.Y. Crim. Proc. § 440.10(2)(b) (emphasis supplied). C.P.L. § 440.10(2)(c) states that when, "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal during the prescribed period or to his unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him[,]" "the court *must* deny a motion to vacate judgment . . . ." N.Y. Crim. Proc. § 440.10(2)(c).

111 S.Ct. 2546, 2565 (1991). Patently absent in this case are cause, prejudice, or a showing that a constitutional violation has probably resulted in the conviction of one who is actually innocent of the offense of which he has been convicted. *Murray v. Carrier*, 477 U.S. at 496; *see also Schlup v. Delo*, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). "To be credible," an actual innocence claim requires a petitioner to present "new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Schlup v. Delo*, 513 U.S. at 324. Petitioner has not claimed that he is actually innocent of the charges. He knowingly and voluntarily pled guilty. Thus, his claims as set forth in Grounds One through Six and Eight through Ten are subject to an excused procedural default and are dismissed on that basis.

### B.   Claim Relating to the 2005 Denial of Parole (Ground Eleven)

Respondent Petitioner's eleventh claim, relating to the denial of parole, is unexhausted and procedurally barred from habeas review. Respondent points out that under New York law, the appropriate challenge to a parole determination is made pursuant to Article 78 of New York's Civil Practice Law and Rules ("C.P.L.R."). *See People ex rel. Justice v. Rossi,* 226 A.D.2d 821, 641 N.Y.S.2d 143 (App. Div. 3d Dept. 1996); *People ex rel. Quartararo v. Demskie*, 238 A.D.2d 792, 656 N.Y.S.2d 451 (App. Div. 3d Dept. 1997).[4] Respondent states that it does not appear

---

[4]   In order to exhaust claims stemming from a denial of parole under New York law, a habeas petitioner must first file an administrative appeal with the Division of Parole's Appeals Unit. *Morel v. Thomas*, No. 02 CV 9622(HB), 2003 WL 21488017, at *2 n. 3 (S.D.N.Y. June 26, 2003) (citing N.Y. Comp. Codes. R. & Regs.. tit. 9, § 8006.1). If that appeal is denied, he must seek relief in New York State Supreme Court pursuant to Article 78 of New York's Civil Practice Law and Rules ("C.P.L.R."). Id. (citing *Desire v. New York Division of Parole*, 2001 U.S. Dist. LEXIS 13784, at *6 (S.D.N.Y. Aug. 22, 2001))Assuming his Article 78 petition is denied by a justice of the Supreme Court, the inmate must then appeal the denial to New York's intermediate appellate court, the Appellate Division. *See Morel*, 2003 WL 21488017, at *2 n. 3 ("Morel did appeal his denial to the Appeals Unit, and he also filed an appeal in New York Supreme Court pursuant to Article 78. Yet, he did not appeal the denial rendered by Justice Cobb to the Appeals Division of the state court. Thus, he failed to fully exhaust the state remedies available to him; Morel concedes this fact.") (citation to record omitted).

from the petition that an Article 78 proceeding was ever brought and therefore Petitioner has failed to exhaust his parole-related claim in state court. The limitations period in which to bring an Article 78 proceeding, however, is four months, *see* C.P.L.R. 217. Respondent explains that Petitioner can no longer challenge the 2005 parole denial in an Article 78 proceeding because the four-month statute of limitations period has run. Therefore, Respondent argues, the claim must be deemed exhausted but subject to a procedural default (i.e., the expiration of the statute of limitations).

In his Traverse replying to Respondent's answer, Petitioner has not come forward with any evidence that he has exhausted his parole claim; he merely states that Respondent is incorrect regarding the failure to exhaust because Petitioner brought two C.P.L. § 440.10 motions. However, a C.P.L. § 440.10 motion, even assuming that he did raise the 2005 parole denial in the 2006 motion, was not a proper vehicle for which to exhaust a claim concerning a parole denial.

In any event, the claim does not state a viable federal constitutional question upon which habeas relief may be granted. It is well-settled that New York's parole scheme (N.Y. Exec. Law § 259-i and N.Y. Comp.Code R. & Reg. tit. 9, § 8001.3) does not give inmates a constitutionally protected liberty interest in parole release. *See Boothe v. Hammock*, 605 F.2d 661, 664 (2d Cir.1979); *accord Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001). *See also Swarthout v. Cooke*, 131 S. Ct. 859, 862 (2011) (*per curiam*) (holding that although California's state parole scheme had been held to create a liberty interest in parole, the Ninth Circuit erred in reviewing the state courts' parole denials on the merits; whatever liberty interest existed was a state interest created by California law, and "[t]here is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty

to offer parole to their prisoners.") (citations omitted). Ground Eleven accordingly is dismissed.

## VI.   Conclusion

For the reasons stated above, the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

/s/ Hon Victor E. Bianchini

_____
VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:   March 14, 2011
Rochester, New York